# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| WAYNE WARREN, BY AND THROUGH HIS MOTHER, NEXT FRIEND, AND LEGAL GUARDIAN, POLLY ROBINSON, | § § § § § | |
| Plaintiff, | § | |
| vs. | § | Case No.: 7:16-CV-01666-RDP |
| | § | |
| ALABAMA DEPARTMENT OF MENTAL HEALTH and ESTATE OF PERRY WALKER, | § § § § | OPPOSED |
| Defendants. | § | |

## MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF FACTS AND LAW IN SUPPORT OF MOTION FILED BY ESTATE OF PERRY WALKER

COMES NOW the Defendant the Estate of Perry Walker, by and through undersigned counsel, pursuant to Rules 54(b) and 56 of the Federal Rules of Civil Procedure, and moves the Court to enter summary judgment in its favor against the Plaintiff, Wayne Warren, as there are no genuine issues of material fact and Defendant the Estate of Perry Walker is entitled to judgment as a matter of law. This Motion is supported by the included memorandum of facts and law, the pleadings filed to date, and the evidentiary submissions. Wherefore, Defendant the Estate of Perry Walker asks that this Court grant its motion and enter judgment in its favor on all claims, with all costs taxed against the Plaintiff.

i

# TABLE OF CONTENTS

STATEMENT OF UNDISPUTED FACTS ..................................................................................1

ARGUMENT..............................................................................................................................3

    I.      The alleged actions of Walker do not rise to the level of a
violation of 42 U.S.C. § 1983 .......................................................................................3

    II.     Count II does not make a claim against Walker ...................................................7

    III.    Counts III, IV and V of the Plaintiff's Complaint do not create
a cause of action against the Estate ........................................................................7

         A. Count III – Noncompliance with Ministerial Duties ...................................7

         B. Count IV – Combining and Concurring .........................................................8

         C. Count V – Violations of Nondiscretionary Rules .........................................9

    IV.    Walker's alleged instruction to the Plaintiff to hit his
roommate does not rise to the level of outrage ....................................................9

    V.     Walker did not assault the Plaintiff ......................................................................13

    VI.    The Plaintiff has not stated a cause of action for harassment
under the Americans with Disabilities Act and Rehabilitation
Act ...............................................................................................................................14

    VII.   The Plaintiff has not properly pled a cause of action for
negligence and/or wantonness ..............................................................................16

CONCLUSION ........................................................................................................................17

SUMMARY JUDGMENT STANDARD.................................................................................3

**STATEMENT OF UNDISPUTED FACTS**

1. Wayne Warren suffers from mild to moderate mental retardation. (Doc. 1, ¶ 4 and 16).

2. His diagnoses include physical aggression. (Doc. 1, ¶ 4).

3. At all times relevant to this lawsuit, Warren resided at Partlow, a facility maintained by the Alabama Department of Mental Health ("ADMH") for individuals with developmental mental disabilities. (Doc. 1, ¶ 6).

4. From November 5, 2001 to April 7, 2005, Perry Walker was employed by ADMH at Partlow as a Mental Health Worker ("MHW"). (Doc. 1, ¶ 13; Exhibit B).

5. In April 2005, Warren lived in an apartment at Partlow; R. Gooden was his roommate. (Doc. 1, ¶ 17 and 18).

6. On April 2, 2005, Perry Walker was the MHW assigned to Gooden. (Doc. 1, ¶ 18).

7. On this particular day, Gooden was upset because he did not want his diaper changed; he threw feces at Walker and at Warren. (Doc. 1, ¶ 20; Exhibit A, p. 31, lines 4-11).

8. Warren did not like Gooden. (Exhibit A, p. 16, lines 14-17).

9. Walker instructed Warren to punch Gooden in the face, which Warren did. (Doc. 1, ¶ 21; Exhibit A, p. 16, line 19 through p. 17, line 1).

10. Walker said to Warren, "Wayne, hit [Gooden] in the head . . . with the radio." (Exhibit A, p. 25, line 22 through p. 26, line 4).

11. That is all that Walker said to Warren. (Exhibit A, p. 26, line 12 - line 16).

12. Warren testified that he hit Gooden in the head with a radio. (Exhibit A, p. 26, lines 5 - 7).

13. Warren was upset because Gooden was throwing feces at him; this is why he hit Gooden. (Exhibit A, p. 31, lines 16 -23 and p. 32, line 1).

1

14. Walker also testified that he hit Gooden because he was told to do so. (Exhibit A, p. 16, lines 20 and 21).

15. Walker, Gooden, and Warren were the only persons in the room when this incident occurred. (Exhibit A, p. 29, lines 14-16).

16. When Warren hit Gooden, Warren's heart was pounding in his chest, and he was hurt in his heart. (Exhibit A, p. 47, lines 8 -20).

17. ADMH placed Walker on mandatory leave while it investigated the alleged incident on April 2, 2005; ADMH did not dispute or terminate Walker. (Exhibits B and F).

18. Perry Walker resigned his employment at Partlow on April 7, 2005. (Exhibits B and C).

19. Perry Walker died in 2005; his estate is named as a defendant in this case. (Doc. 1, ¶¶ 7 and 9).

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." O'Connor v. J. C. Penney Corp., No. 2:16-CV-02068-RDP, 2018 WL 2416423 at *2 (N.D. Ala. May 29, 2018), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

> When faced with a 'properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations.' Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir.

1997). As Anderson teaches, under Rule 56(c) a plaintiff may not simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof at trial, he must come forward with at least some evidence to support each element essential to his case at trial. See Anderson, 477 U.S. at 252. '[A] party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Id. at 248 (citations omitted).Summary judgment is mandated 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' Celotex Corp., 477 U.S. at 322. 'Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative.' Sawyer v. Sw. Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson, 477 U.S. at 250-51).

'[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' Anderson, 477 U.S. at 249. 'Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." ' Sawyer, 243 F. Supp. 2d at 1262 (quoting Anderson, 477 U.S. at 251-52); see also LaRoche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ('The law is clear ... that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.').

McGhee v. City of Birmingham, No. 2:16-CV-00896-RDP, 2018 WL 447418, at *2 (N.D. Ala. Jan. 17, 2018).

## ARGUMENT

**I.** <u>The alleged actions of Walker do not rise to the level of a violation of 42 U.S.C. § 1983.</u>

Title 42 U.S.C. § 1983 provides a cause of action for deprivation of rights against "[e]very person who, under color of any statute. . . of any State. . . subjects, or causes to be subjected, any citizen. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . . ."  The Plaintiff has brought a complaint against Walker under this statute, alleging that Walker violated his civil rights by his deliberate indifference to the Plaintiff's safety and security and by Walker's failure to provide adequate security and care for the Plaintiff.  (Doc. 1, ¶ 32).  The

3

Plaintiff claims that Walker abused and exploited him in violation of the policies of the Alabama Department of Mental Health and subjected him to unequal protection under the laws of the United States.[1]  (Doc. 1, ¶ 29).

To state a claim under § 1983, the Plaintiff must show "(1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law."[2] See Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005). Section 1983 does not create any substantive federal rights in and of itself; it is merely a vehicle to bring such suits. Williams v. Board of Regents of Univ. Sys. of Georgia, 477 F.3d 1282, 1299 (11th Cir. 2007).

For the Plaintiff to establish a § 1983 claim for violation of his due process rights, he must show that Walker was "deliberately indifferent to a substantial risk to his safety."[3] Lavender v. Kearney, 206 Fed.Appx. 860, 863 (11th Cir. 2006), citing Purcell v. Toombs County, GA, 400 F.3d 1313, 1319 (11th Cir. 2005). To establish deliberate indifference, Warren must show that Walker " '(1) was objectively aware of a risk of serious harm; (2) recklessly disregarded the risk of harm; and (3) [that] this conduct was more than merely negligent.' " Id., quoting Ray v. Foltz, 370 F.3d

---

1 It is unclear whether the Plaintiff is asserting a claim of violation of equal protection under the Fourteenth Amendment.  He has not, however, alleged that he was treated differently because of any suspect classification.  Accordingly, he cannot maintain a "class of one" under the Equal Protection Clause of the Fourteenth Amendment as he cannot show that he has been intentionally treated differently from others similarly situated and cannot show that there is no rational basis for the difference in treatment.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

2 For purposes of this Motion, the Estate does not contest that Walker was acting under color of state law when this incident occurred.

3 Whether the Plaintiff was voluntarily or involuntarily confined at Partlow does not change the due process protections afforded to him.  Patients who enter an institution initially on a "voluntary basis become involuntary patients who have due process rights under the fourteenth amendment" to the extent that those patients might be prevented from leaving. Wyatt v. Poundstone, 892 F. Supp. 1410, 1421 n.65 (M. D. Ala. 1995), citing Doe v. Public Health Trust of Dade County, 696 F.2d 901, 903 n.10 (11th Cir. 1983).

4

1079, 1083 (11th Cir. 2004). Deliberate indifference is not the same as negligence or carelessness. Id. To the contrary, "a state official acts with deliberate indifference only when he disregards a risk of harm of which he is *actually aware*." Id. General knowledge about an individual's violent tendencies, without additional specific information about the risk, does not constitute deliberate indifference. Id., citing Carter v. Galloway, 352 F.3d 1346, 1349-50 (11th Cir. 2003).

The Eleventh Circuit takes "seriously the Supreme Court's caution against expanding the concept of substantive due process." Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1304 (11th Cir. 2003). The Fourteenth Amendment should not be used, through Section 1983, as a " 'font of tort law' to convert state tort claims into federal causes of action." Id. at 1305. Conduct by a government actor "[rises] to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." Id. citing Collins v. City of Harker Heights, Tex., 503 U.S. 115 (1992). While there is no calibrated yardstick to measure what is conscience shocking, a showing of negligence is not sufficient to demonstrate a constitutional due process claim; even intentional wrongs seldom violate the Due Process Clause. Id., citing County of Sacremento v. Lewis, 523 U.S. 833 (1998). "[C]onduct by a government actor that would amount to an intentional tort under state law will rise to the level of a substantive due process violation only if it also 'shocks the conscience.' " Id., citing Dacosta v. Nwachukwa, 304 F.3d 1045, 1048 (11th Cir. 2002).

The single instance of conduct attributed to Walker – namely, "instructing" the Plaintiff to strike Gooden – is insufficient to state a claim for relief under § 1983. A "tort committed by a state official acting under color of law is not, in and of itself, sufficient to show an invasion of a person's right under the (Civil Rights) Act." See Patricia B. v. Jones, 454 F. Supp. 18, 21 (W. D. Penn. 1978) quoting Kent v. Prasse, 385 F.2d 406, 407 (3d Cir. 1967). Not every assault that occurs in a

state mental hospital gives rise to a cause of action for a civil rights violation. See id. at 22 (applying the Eighth Amendment and finding no violation). This Court should not fashion a constitutional remedy where none exists. See id.

Although deliberate indifference in prison cases are analyzed under an Eight Amendment standard instead of a Fourteenth Amendment standard (Verret v. Alabama Dep't of Mental Health, 511 F. Supp. 2d 1166, 1176 (M. D. Ala. 2007), one can draw an analogy to the insufficiency of Walker's alleged actions toward the Plaintiff and the actions of prison employees toward inmates. Threatening or abusive comments made by a correctional officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation." Brown v. Draper Corr. Facility, No. 2:15-CV-102-MHT, 2015 U.S. Dist. LEXIS 31041, at *2 (M.D. Ala. Feb. 11, 2015), citing Edwards v. Gilbert, 867 F.2d 1271, 1273 n.1 (11th Cir. 1989). See also Phillips v. Brown, No. 6:14-CV-966-RDP, 2016 WL 892779 (N.D. Ala. Mar. 9, 2016) (finding no deliberate indifference under the Fourteenth Amendment when law enforcement used Taser on pre-trial detainee); Sumler v. Lipsey, No. 7:08–CV–46, 2008 WL 5146621, at *1 n.1 (M.D. Ga. Dec. 8, 2008) ("claims alleging mere threats without a showing of physical injury would be deemed frivolous and dismissed with prejudice"). In Hensley v. Lewis, 153 Fed.Appx. 178, 179-80 (4th Cir. 2005), the Fourth Circuit examined a claim that a prison employee had encouraged other inmates to attack the plaintiff-inmate, although none acted upon the employee's encouragement. The court concluded that, because "[m]ere threats or verbal abuse by…officials, without more, do [sic] not state a cognizable claim under § 1983," the lower court was correct to dismiss the claim. Id. at 180. The correctional employee's encouraging words in Hensley are similar in impact to Walker's alleged statement in this action; in both cases, the plaintiff suffered no harm from the statement. Thus, Walker's statement, too, is a "mere threat" and does not give rise to an actionable Section 1983 claim.

The fact that Walker's alleged conduct may have constituted a violation of ADMH policy does not mean that his conduct amounts to a violation of the Constitution. See Verret, 511 F. Supp. 2d at 1177. The Plaintiff can present no evidence that indicates that Walker's conduct meets the level of culpability required to find a violation of the Fourteenth Amendment. Id. "[M]ere negligence does not rise to the level of a violation of the Fourteenth Amendment." Id. at 1176, citing Bendiburg v. Dempsey, 909 F.2d 463, 470 (11th Cir. 1990). Walker's actions were not conscience-shocking under the Constitution. There was no objective harm to the Plaintiff. Walker's alleged actions do not rise to the level of a constitutional violation; at most, they form the basis of a state tort claim.

Based on the Plaintiff's testimony, Walker's instruction to him to hit Gooden was, at most, simple negligence. The Plaintiff was not injured, other than the "pounding" of his heart in his chest. (Exhibit A, p. 47, lines 8-20). The Plaintiff cannot show that there was a risk of serious harm to him or that Walker disregarded a risk of serious harm of which Walker was aware. Because Walker's conduct did not rise to the level of a Fourteenth Amendment violation, the Estate is entitled to summary judgment in its favor on this claim.

**II.** Count II does not make a claim against Walker.

Count II alleges only a violation of Section 504 of the Rehabilitation Act of 1975 by the Alabama Department of Mental Health. Therefore, the Estate does not address this Count.

**III.** Counts III, IV and V of the Plaintiff's Complaint do not create a cause of action against the Estate.

The Plaintiff's Complaint makes claims against the Estate that do not create a private cause of action.

    A.    Count III - Noncompliance with Ministerial Duties

The Plaintiff alleges in Count III of the Complaint that Walker was "responsible for

following the rules, regulations, policies and/or procedures" of ADMH. (Doc. 1, ¶ 51). He further alleges that Walker negligently or wantonly failed to follow those policies and procedures and failed to use due care in carrying out his responsibilities. (Doc. 1, ¶ 51). Accordingly, the Plaintiff alleges that Walker's "acts and/or omissions constitute violations of ministerial rather than discretionary duties." (Doc. 1, ¶ 51). The Plaintiff states that Walker was engaged in ministerial, non-discretionary functions and had no discretion to violate detailed rules and regulations of ADMH. (Doc. 1, ¶ 52).

The Plaintiff's claim for "Noncompliance with Ministerial Duties" is not a cognizable claim under Alabama law. (Exhibit D - Harris v. Gurley, No. 5:09-CV-02108-CLS (N.D. Ala. March 26, 2010)). The Plaintiff's inclusion of this claim appears to be a response to an affirmative defense that Walker has not raised in his Motion for Summary Judgment – a defense of State-agent immunity. There is no case law to support "the proposition that Alabama recognizes an affirmative cause of action for noncompliance with ministerial duties and checklists." (Exhibit D, p. 41). The Plaintiff "cannot create a cause of action simply to launch a preemptive strike against one of the defendant['s] potential defenses." (Exhibit D, p. 42).

In addition, even if Walker did violate ADMH policy, that violation would not create an independent, private cause of action. Violations of department policy would be addressed through Partlow's internal disciplinary system. Because Count III does not state an actionable claim against Walker, the Estate is entitled to the entry of summary judgment in its favor. (Exhibit D, p. 42).

B.     Count IV – Combining and Concurring

The Plaintiff alleges that the actions of the Defendants combined and concurred to cause him harm. (Doc. 1, ¶ 58). "Combining and Concurring" is not an independent cause of action. This appears to be another attempt to plead negligence. While the Estate acknowledges that the Alabama Pattern Jury Instructions do include an instruction for combining and concurring negligence, that

does not constitute an independent cause of action. Count IV is merely a theory of liability, not a cause of action. Therefore, the Estate is entitled to the entry of a summary judgment in its favor on this Count.

    C.    Count V – Violations of Nondiscretionary Rules

Plaintiff alleges that Walker violated clearly-established ADMH rules and guidelines when he instructed the Plaintiff to assault Gooden. (Doc. 1, ¶ 62). Plaintiff further alleges that Walker violated ADMH rules and regulations when abusing, exploiting, and mistreating him, and failing to report his abuse. (Doc. 1, ¶ 63). The Plaintiff claims that Walker's "failure to follow these policies constitute violations of ministerial rather than discretionary functions" and, thus, Walker is precluded from claiming immunity. (Doc. 1, ¶ 63). Again, this Count appears to be a preemptive strike by the Plaintiff against a claim of immunity by Walker. Walker has not raised immunity as a defense in this Motion. "Violations of nondiscretionary rules" is not a cause of action and does not state a claim against Walker upon which relief should be granted. Accordingly, the Estate is entitled to the entry of summary judgment in its favor on this claim.

**IV.**    <u>Walker's alleged instruction to the Plaintiff to hit his roommate does not rise to the level of outrage.</u>

The Plaintiff's contention, in Count VI of the Complaint, that Walker's alleged "instructing" of the Plaintiff to strike Gooden caused the Plaintiff to "suffe[r] injury and harm" does not establish a claim under the tort of outrage. (Doc. 1, ¶ 66-68). "The elements of the tort of intentional infliction of emotional distress, also called the tort of outrage, are that (1) 'the defendant's conduct was intentional or reckless,' (2) the conduct 'was extreme and outrageous,' and (3) the conduct 'caused emotional distress so severe that no reasonable person could be expected to endure it.'" Head v. Baisden, No. 7:14-CV-01788-HNJ, 2017 WL 5195875, at *4 (N.D. Ala. Nov. 9, 2017), quoting Ex

9

parte Crawford & Co., 693 So. 2d 458, 460 (Ala. 1997).

The Plaintiff has not asserted that, in making the alleged statement, Walker acted intentionally or recklessly. The requisite state of mind relates not to the alleged conduct of the defendant but to the emotional distress alleged to arise therefrom; what is necessary is that "the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct." Harris v. McDavid, 553 So. 2d 567, 569-70 (Ala. 1989). The Plaintiff has failed to make this allegation and, through bare allegations that Walker instructed the Plaintiff to hit Gooden, has not presented factual contentions to support such an allegation, were it to be raised. Accordingly, the Plaintiff has failed to state a claim under the tort of outrage.

Moreover, even assuming, *arguendo*, the truth of the general allegations of suffering and harm contained in the Complaint, the Plaintiff does not allege emotional distress of such a magnitude that no reasonable person could be expected to endure it. Alabama case law establishes that this is an exacting standard and a bar even to particularized allegations of emotional distress deemed insufficiently severe. Compare Grantham v. Vanderzyl, 802 So. 2d 1077, 1081 (Ala. 2001) (affirming summary judgment on tort of outrage claim where plaintiff nurse alleged that supervising doctor threw surgical drapes containing a patient's blood and surgical refuse on her, causing her to have to monitor her health for infectious diseases, because "[t]he mere fear of contracting a disease, without actual exposure to it, cannot be sufficient to cause the level of emotional distress necessary for this cause of action"), with Rice v. United Ins. Co., 465 So. 2d 1100, 1101-03 (Ala. 1984) (plaintiff stated tort of outrage claim by alleging that the cumulative stress suffered from a months-long effort by her supervisor to coerce the then-pregnant plaintiff into taking disability leave caused her miscarriage). Failure to provide evidence of emotional distress that no reasonable person could be expected to endure is fatal to a tort of outrage claim, even in the pleading stage. S.S. v. Bolton,

522 Fed.Appx. 452, 455-56 (11th Cir. 2013) (reversing district court's denial of summary judgment on outrage claim because plaintiff failed to provide such evidence "through testimony or medical records," and "[t]hus, there is no genuine issue of material fact"). No facts alleged in the Complaint – and none, for that matter, developed in discovery – suggest that the Plaintiff has experienced more than generalized emotional distress in the wake of the events of April 2, 2005. In these deficiencies too, the Plaintiff fails to state a claim under the tort of outrage.

Finally, Walker's alleged statement to the Plaintiff does not constitute conduct sufficiently outrageous to state a claim under the tort of outrage. "[T]he tort of outrage is a very limited cause of action that is available only in the most egregious circumstances." Thomas v. BSE Indust. Contractors, Inc., 624 So. 2d 1041, 1044 (Ala 1993). Accordingly, "this tort does not recognize recovery for 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" American Road Service Co. v. Inmon, 394 So. 2d 361, 364-65 (Ala. 1980). Liability attaches "only when the conduct is…so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id. at 365.  Whether conduct rises to this level of outrageousness is a question of law. Head, 2017 WL 5195875 at *10. The Eleventh Circuit has deemed conduct it finds "generally reprehensible" to be insufficient under this demanding standard. Tinker v. Beasley, 429 F.3d 1324, 1326-31 (11th Cir. 2005) (in repeated interrogations, police officers told plaintiff, incorrectly, that her lawyer had abandoned her, "they were all she had to get her out of trouble…she would never see her children again unless she confessed…she had two options: the electric chair or life in prison…"). "[B]oorish, vulgar, and completely unacceptable" conduct has proved similarly inadequate. Stancombe v. New Process Steel LP, 652 Fed.Appx. 729, 739 (11th Cir. 2016) (defendant grabbed plaintiff's head and made pelvic thrusts in plaintiff's face, but the court "c[ould not] say that this

11

one-time incident was so outrageous as to satisfy the requisite element of the tort of outrage").

The severe level of outrageousness required by the tort has confined its recognition, traditionally, to "three kinds of conduct: (1) wrongful conduct in the family-burial context…(2) barbaric methods employed to coerce an insurance settlement…and (3) egregious sexual harassment." Potts v. Hayes, 771 So. 2d 462, 465 (Ala. 2000). While outrage is not limited to these contexts, neither are there many courses of conduct sufficiently outrageous to warrant liability under the tort of outrage, even those touching and concerning the traditional categories of the tort's recognition. Compare Stancombe, 652 Fed.Appx., 739 *and* McIsaac v. WZEW-FM Corp., 495 So. 2d 649, 651 (Ala. 1986) (conduct of defendant who propositioned plaintiff for affair multiple times, attempted to kiss the plaintiff, touched the plaintiff and put his arm around her equivalent to "mere insults, indignities, threats, [or] annoyances"), with O'Rear v. B.H., 69 So. 3d 106, 118-19 (Ala. 2011) (affirming liability under tort of outrage where family physician repeatedly gave teenager addictive prescription drugs in exchange for sex acts and the teenager became addicted to drugs as a result) *and* Rice, 465 So. 2d at 1101-03 (plaintiff stated tort of outrage claim by alleging that her supervisor spent months coercing her to take disability leave by pressuring her husband, making false accusations of incompetence in front of co-workers, withholding vital business information, and wrongfully terminating her).

Seeking recovery under a cause of action that specifically bars recovery for mere threats, the Plaintiff has alleged only that Walker verbally instructed him to hit Gooden – a statement that, at most, is a threat – and, at that, a threat to someone other than the Plaintiff. The alleged conduct is not analogous to any of the three established categories, which each involve conduct that is *personally* threatening or offensive. The outrageousness of Walker's alleged conduct does not even rise to the level of that alleged by the unsuccessful plaintiffs in Tinker, Stancombe, and McIssac – all of whom,

more akin to successful plaintiffs under the tort of outrage, alleged personally threatening or offensive conduct. In Stancombe and McIsaac, that conduct involved offensive physical contact, and in Tinker and McIsaac, the threatening or lewd conduct occurred in multiple instances over a period of time. In the instant case, a single verbal statement is alleged against the defendant, from a single occasion, in which Walker tells the Plaintiff to hit a third person whom he was already motivated to hit independently of the suggestion. (Exhibit A, pp. 31-32). It stretches the bounds of reason – and the bounds of the tort of outrage – to assert that this single statement by Walker equates in degree of outrageousness to the months-long patterns of conduct alleged in O'Rear and Rice. Thus, the Plaintiff has failed to allege conduct sufficiently outrageous to warrant liability under the tort of outrage and, resultantly, has failed to state a single element of a tort of outrage claim against this Defendant.

**V.** Walker did not assault the Plaintiff.

The Plaintiff alleges that Walker "physically assaulted" him. (Doc. 1, ¶ 69). This claim lacks factual support. An assault consists of "... an intentional, unlawful, inconsistent offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented." Western Union Telegraph Co. v. Hill, 150 So. 709, 710 (Ala. Ct. App. 1933) *cert. denied,* 150 So. 711 (Ala. 1933). "*Words standing alone cannot constitute an assault.* However, they may give meaning to an act, and when both are taken together they may create a well-founded fear of a battery in the mind of the person at whom they are directed, thereby constituting an assault." Allen v. Walker, 569 So. 2d 350, 351-52 (Ala. 1990) (emphasis added).

In the instant case, Walker's only alleged conduct toward the Plaintiff is verbal; no facts

13

revealed during discovery suggest that Walker acted in the relevant events beyond instructing the Plaintiff to strike Gooden. This verbal statement does not constitute a "physical assault" upon the Plaintiff – or, indeed, an assault of any kind under Alabama law. Moreover, the Plaintiff has produced no facts tending to show that Walker's alleged conduct created a well-founded fear of imminent battery in the Plaintiff's mind. The only threat of offensive touching was Gooden's throwing of feces in the Plaintiff's direction, which upset him and motivated him to strike Gooden with the radio. (Exhibit A, pp. 31-32.)

The Plaintiff cannot produce facts tending to show that Walker had the apparent present ability to carry out the threat. This element's necessity further underscores the incongruence of the Plaintiff's allegations with the doctrinal contours of the tort of assault, as the only threat alleged in the instant case relies entirely on the Plaintiff as its instrument to inflict harm on a third person.

**VI.** <u>The Plaintiff has not stated a cause of action for harassment under the Americans with Disabilities Act and Rehabilitation Act</u>.

The Plaintiff makes a generalized statement that he was subjected to unlawful harassment by Walker and that it "is unlawful under the Rehabilitation Act to harass a disabled person." (Doc. 1, ¶¶ 71 and 72). While harassment is actionable under the ADA and Rehab Act, the Plaintiff has not alleged facts sufficient to prevent the entry of summary judgment in favor of the Estate on this claim. The Plaintiff has not alleged how he was harassed, what actions of Walker constitute harassment, or how he was damaged. The Plaintiff has not invoked a claim that he was entitled to an accommodation.

The Plaintiff does not allege that he was the victim of retaliation as a result of trying to enforce his rights under the ADA and Rehab Act as prohibited by 42 U.S.C. § 12203(b) (2012) ("It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or

14

enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter"). [4] He merely states that it is unlawful to harass a disabled person. (Doc. 1, ¶ 72). This bare-bones allegation is insufficient to raise an issue of disputed fact, and there is no admissible, substantial evidence to support the Plaintiff's claim. A "plaintiff cannot raise a state tort claim to the level of a federal disability claim merely because the plaintiff had a disability at the time the event occurred." Gaither v. Barron, 924 F. Supp. 134, 137 (M.D. Ala. 1996). The fact that the Plaintiff suffered from a disability at the time of the incident does not mean that his claims fall under the ADA or the Rehab Act. (Exhibit E – Dugger v. Volunteers of Am. North Ala. Inc., No. 5:11-CV-00277-CLS (N.D. Ala. May 13, 2011)).

Courts recognizing claims of harassment under the ADA and Rehab Act have generally analyzed them under a hostile work environment theory. Gaither, 924 F. Supp. at 137. Under this theory, "the defendant's alleged harassment must be *based on* the protected characteristic (here – the plaintiff's disability)." Id. (emphasis in original). Under a hostile work environment theory, "(1) the employee must be a member of a protected class; (2) the employee must have been subjected to unwelcome harassment; (3) the harassment must be based on the protected characteristic; and (4) the harassment must have affected a term or condition of employment." Id. at 137 n.4, citing Cross v. Alabama Dept. of Mental Health & Mental Retardation, 49 F.3d 1490, 1504

---

4 Two other statutory provisions, 42 U.S.C. ¶¶ 12182 and 12112 (2012), also provide relief for a plaintiff who has been harassed by a defendant in his individual capacity. Williams v. Fulton County Sch. Dist., 181 F. Supp. 3d 1089 (N.D. Ga. Mar. 31, 2016). 42 U.S.C. § 12182 is inapplicable because this provision applies only to private entities operating public accommodations, not public entities. Id. at 1140, citing Bloom v. Bexar County, Tex., 130 F.3d 722, 726-27 (5th Cir. 1997). 42 U.S.C. § 12112 is inapplicable, as it "does not provide for individual liability, only for employer liability." Bloom, 130 F.3d at 726-27, quoting Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996).

(11th Cir. 1995). If one applies the hostile work environment theory to the facts of this case, the Plaintiff has not alleged facts sufficient to support a charge that Walker's actions or instructions were based on the Plaintiff's disability. See id. at 137. Based on the allegations in the Complaint, Walker's actions or instructions were in response to Gooden's throwing feces at Walker. Walker's actions or instructions to the Plaintiff were not in any way based on the Plaintiff's disability. Defendant's counsel has found no authority that would allow the Plaintiff to recover under a theory of harassment under the ADA or Rehab Act for personal injuries resulting from abuse or neglect by Walker.

In the Complaint, the Plaintiff cites 29 C.F.R. § 1630.12 (2017), which states that "[i]t is unlawful to coerce, intimidate, threaten, harass or interfere with any individual in the exercise or enjoyment of, or because that individual aided or encouraged any other individual in the exercise of, any right granted or protected by this part." (Doc. 1, ¶ 73). There is no evidence before this Court that Walker harassed Warren because of his exercise of or enjoyment of any right. The Plaintiff has not stated what right he was exercising or enjoying when he was allegedly harassed by Walker but has instead made a simple, unsupported allegation that his rights were violated. Because there is no admissible, substantial evidence that Walker harassed the Plaintiff because he has a disability, the Estate is entitled to the entry of a summary judgment in its favor on this claim.

**VII.** The Plaintiff has not properly pled a cause of action for negligence and/or wantonness; his claim involves an intentional act.

Torts are generally categorized (based on the culpability of the tortfeasor) as actions involving intentional conduct (such as assault and battery or trespass) or actions involving negligence. See Ex parte Capstone Bldg. Corp., 96 So. 3d 77, 83-84 (Ala. 2012). The Plaintiff's allegation that Walker instructed him to hit Gooden clearly describe intentional conduct, not

negligence. "An assault and battery is not negligence for such action is intentional, while negligence connotes an unintentional act." Matter of Rice, 18 B.R. 562, 565 (N.D. Ala. 1982), quoting Williams v. Pressman, 113 N.E. 2d 395, 396 (Ohio Ct. App. 1953). See also Aldrich v. Tyler Grocery Co., 206 Ala. 138, 140, 89 So. 289, 290 (Ala. 1921). A plaintiff may not recast an act of intentional harm as negligence by simply including negligence as a cause of action while alleging only intentional acts. Allegations which describe willful or malicious behavior, although not labeled as such, cannot support a claim of negligence. See McCauley v. Estes, 726 So. 2d 719, 721 (Ala. Civ. App. 1998). The Plaintiff has merely pled that "[t]he Defendants acted negligently and/or wantonly in their care of Wayne Warren while he was a patient at Partlow" and that the Defendants "had a duty to protect Wayne Warren from harm and failed in this duty." (Doc.1, ¶¶ 76 and 77). These vague allegations cannot support the Plaintiff's negligence or wantonness, and these claims must fail.

## CONCLUSION

The Estate submits that summary judgment is due to be entered in its favor on all counts. If the Court does enter summary judgment in favor of the Estate on the Plaintiff's federal-law claims (Counts I and VIII), the Plaintiff's supplemental state-law claims are due to be dismissed as well because there exists no independent basis upon which this Court could exercise subject matter jurisdiction over those claims.

Respectfully submitted this 31st day of May, 2018.

                                              Respectfully submitted,

                                              */s/ Terri Olive Tompkins*
                                              Terri Olive Tompkins
                                              Attorney for Defendant Estate of Perry Walker

PHELPS, JENKINS, GIBSON & FOWLER, L.L.P.
1201 Greensboro Avenue
Tuscaloosa, Alabama 35401
Telephone: (205) 345-5100
Facsimile: (205) 758-4394
Email: ttompkins@pjgf.com

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing pleading or paper has been served upon:

James Michael Comer
Patterson Comer Law Firm
303 Main Avenue, Suite A
Northport, AL 35476-5057

Thomas B. Klinner
Edward C. Hixon
Alabama Department of Mental Health
Bureau of Legal Services
P. O. Box 301410
Montgomery, AL 36130-1410

Stanley J. Murphy
Murphy & Murphy LLC
P. O. Box 3163
Tuscaloosa, AL 35403

Nancy S. Jones
Alabama Department of Mental Health
1651 Ruby Tyler Parkway
Tuscaloosa, AL 35404

on this 31st day of May, 2018, by electronically filing, delivering a copy to each, by mailing a copy to each by first class United States Mail, postage prepaid, addressed to them at their last known address or, if no address is known, by leaving it with the Clerk of this Court.

/s/ TERRI OLIVE TOMPKINS
Attorney for Defendant the Estate of
Perry Walker